UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANJAY BHATNAGAR,<br>          Plaintiff,<br>    v.<br>UNITED STATES OF AMERICA,<br>          Defendant. | Case No. 14-cv-00327-MEJ<br><br>**ORDER RE: MOTION TO DISMISS**<br>Re: Dkt. No. 38 |

## INTRODUCTION

In this tort action, Defendant United States of America moves to dismiss on the ground that Plaintiff Sanjay Bhatnagar failed to timely present his claim to the proper federal agency as required under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-80. Bhatnagar has filed an Opposition (Dkt. No. 42) and the government has filed a Reply (Dkt. No. 44). The Court finds this matter suitable for disposition without oral argument and VACATES the June 25, 2015 hearing. *See* Fed. R. Civ. P. 78(b); Civil L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** the government's Motion to Dismiss for the reasons set forth below.

## BACKGROUND

This action arises out of a bicycle accident occurring on November 14, 2009, when Bhatnagar rode his bicycle over a speed bump on West Pacific Avenue in the Presidio park area in San Francisco. First Am. Compl. ("FAC") ¶¶ 5a-5b, Dkt. No. 20. Bhatnagar was familiar with the route he took on the day of the accident, but the speed bump had been newly (and allegedly improperly) installed, and there was inadequate signage to warn bicyclists of the new speed bump. *Id.* ¶¶ 5b-5c. Bhatnagar flew over the handlebars and landed on the pavement, fracturing his

cervical and thoracic spine and suffering injuries to his face and head. *Id.* ¶ 5d. Since the accident, Bhatnagar has suffered a wide range of ongoing and permanent physical symptoms, including numbness in his legs, tingling in his arms and hands, loss of strength and fine motor skills, diminished sense of balance, and partial loss of vision in his left eye. *Id.* As a result, he has been unable to return to his job and has been declared permanently disabled. *Id.* He now survives on Social Security Disability income. *Id.*

Shortly after the accident, an officer with the United States Parks Police arrived on the scene and filled out a "Case Incident Record." *Id.*, Ex. B at 11. The record is a standard form provided by the National Park Service; it reads, in capital letters at the top of the form, "United States Department of the Interior, National Park Service." *Id.* The officer also impounded Bhatnagar's bicycle and some personal property, and filled out a receipt form so that Bhatnagar could later reclaim these items. *Id.*, Ex. B at 13 (Evidence/Property Control Receipt). That form also reads, in capital letters at the top of the form, "United States Department of the Interior, National Park Service." *Id.*

On November 1, 2011, Bhatnagar executed an administrative tort claim form, which the Dolan Law Firm, his previous counsel, sent by Federal Express to the Director of the National Park Service on November 4, 2011. *Id.* at 8-10. From Bhatnagar's FAC, it appears that the National Park Service received the form on November 8, 2011. *Id.* at 8-9. However, the government appears to concede that the claim may have been received one day earlier, on November 7. Mot. at 3; Reply at 7. Accordingly, for purposes of this Order, which construes all facts in Bhatnagar's favor, the Court shall consider the claim as received on November 7.

The National Park Service (via the Department of Interior) forwarded Bhatnagar's claim to the Presidio Trust. FAC, Ex. B at 6. According to an email from the Presidio Trust's Deputy General Counsel, Alfred Rosen, and date stamps on the transmittal letter and claim form, the Trust received the copy of the claim form on December 14, 2011. *Id.* at 6, 8-9.

Bhatnagar received a denial of his claim from the Trust on November 26, 2013. FAC ¶ 6. He filed this action on January 22, 2014 (Dkt. No. 1) and filed the operative FAC on November 21, 2014. At some point after the Presidio Trust received Bhatnagar's administrative tort claim, it

1   appears that the Dolan Law Firm stopped representing him, as he filed this case pro se. Bhatnagar

2   requested that the Court appoint counsel, and the Court subsequently appointed Stephanie Skaff,

3   Anthony Grumbach, and James Reese of Farella Braun & Martel as pro bono counsel. Dkt. Nos.

4   24, 31.

5         The government now moves to dismiss Bhatnagar's FAC, arguing that it does not include

6   any facts showing that the administrative tort claim was timely received by the appropriate agency

7   and is therefore barred by the statute of limitations.[1] Mot. at 4.

## LEGAL STANDARD

9         Under Rule 12(b)(6), a party may file a motion to dismiss based on the failure to state a

10  claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a

11  complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face."

12  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a

13  "probability requirement" but mandates "more than a sheer possibility that a defendant has acted

14  unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations

15  omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual

16  allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the

17  non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.

18  2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of

19  sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*,

20  534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v.

21  Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the

22  basis of a dispositive issue of law.").

23        Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only

24  required to make "a short and plain statement of the claim showing that the pleader is entitled to

25  relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of

---

[1] As part of its Motion, the government submitted several documents which it claims are the proper subject of judicial notice. Mot. at 4-5. Bhatnagar objects to the government's request. Opp'n at 17-18. However, because the Court has not considered these documents as part of its Order and only considered the documents that Bhatnagar attached to his FAC, the issue is moot.

3

a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## DISCUSSION

The government argues that Bhatnagar's claim must be dismissed because, although his attorneys mailed the tort claim form on November 4, 2011, before the statutory deadline, they sent it to the wrong agencies. Mot. at 6. Although the National Park Service timely received Bhatnagar's claim, the government maintains that the Presidio Trust is the federal entity responsible for management of the portion of the Presidio where his bicycle crash occurred. *Id.* at 2. The government argues that the FTCA required Bhatnagar to present his claim to the appropriate government agency within two years of the incident, i.e, by November 11, 2011, but because the government did not receive his claim until December 14, 2011, it argues Bhatnagar's

4

claim was untimely. *Id.* at 6. The government further argues that Bhatnagar cannot invoke the doctrine of equitable tolling because he was represented by counsel, yet counsel failed by act diligently by waiting until just a few days before the statute of limitations expired before sending his claim to the wrong agency. *Id.* at 9-10.

In response, Bhatnagar argues that he presented his claim to an appropriate federal agency before the deadline. Opp'n at 5. Bhatnagar contends there is substantial evidence to establish that the National Park Service qualifies as an "appropriate" agency because the words "National Park Service" are printed in capital letters across both the Case Incident Record prepared by a U.S. Park Police officer immediately following Bhatnagar's accident and the Evidence/Property Control Receipt the officer filled out so that Bhatnagar could later reclaim his bicycle and other property. *Id.* (citing FAC, Ex. B at 11-13). Bhatnagar further argues that the Department of Transportation, to which he also submitted a claim at the same time, may be an appropriate agency because the government has failed to say which agency "designed, installed, maintained, contracted for, or paid for the speed bump and signage that caused [his] accident."[2] *Id.* at 8.

A. **Appropriate Federal Agency**

Under the FTCA, an "action shall not be instituted upon a claim against the United States for money damages" unless the claimant has first exhausted his administrative remedies. 28 U.S.C. § 2675(a). Section 2401(b) sets a two-year deadline within which a claimant must present a claim "to the appropriate Federal agency . . . after such claim accrues." *Id.* § 2401(b). Federal regulations define the "appropriate agency" as an "agency whose activities gave rise to the claim." 28 C.F.R. § 14.2(b)(1). 28 C.F.R. § 14.2 governs the question of when an administrative claim is presented for purposes of the Act. *Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1251 (9th Cir. 2006). The regulation states: "a claim shall be deemed to have been presented when a Federal agency *receives* from a claimant . . . an executed Standard Form 95 or other written notification of

---

[2] Bhatnagar's FAC does not include any documentation regarding the Department of Transportation claim. However, in his Opposition, he states: "The Trust . . . admits that Bhatnagar's claim was also 'presented' to the Department of Transportation at the same time, on November 7, 2011." Opp'n at 6. Accordingly, the Court shall consider the parties' arguments regarding this second claim for purposes of its analysis.

5

an incident . . . ." 28 C.F.R. § 14.2 (emphasis added). "The common law mailbox rule[, which] provides that the proper and timely mailing of a document creates a 'rebuttable presumption that the document has been received by the addressee'" is inapplicable to the FTCA. *Vacek*, 447 F.3d at 1251.

In 1996, Congress passed the Presidio Trust Act, which transferred administrative jurisdiction of the interior 80 percent of the Presidio from the National Park Service to "a wholly owned government corporation to be known as the Presidio Trust." Section 103, Presidio Trust Act, 16 U.S.C. § 460bb appendix. The Trust's authority is to "manage the leasing, maintenance, rehabilitation, repair and improvement of property within the Presidio . . . in accordance with the purposes set forth in section 1" of the Golden Gate National Recreation Area Act and the General Management Plan approved for the Presidio. *Id.* § 104(a); *see also Presidio Historical Ass'n v. Presidio Trust*, 2013 WL 2435089, at *2 (N.D. Cal. June 3, 2013). The site of Bhatnagar's bike accident—West Pacific Avenue east of the Julius Kahn Playground—is within the Presidio Trust's jurisdiction. Rosen Decl. ¶ 5, Dkt. No. 38-3. Thus, for the area where Bhatnagar's accident occurred, under federal regulations, "[FTCA] Claims shall be filed directly with the Presidio Trust." 36 C.F.R. § 1009.2(b).

Bhatnagar argues that the National Park Service and the Department of Transportation are also "appropriate" agencies for the presentation of his administrative claim. The regulations envision that multiple federal agencies may be considered "appropriate," as the regulations require that "when more than one Federal agency is or may be involved in the events giving rise to the claim," the agencies should coordinate their response. 28 C.F.R. § 14.2(b)(2).

With respect to the National Park Service, Bhatnagar contends that the response of the United States Park Police to his accident establishes that it is an appropriate agency. Opp'n 6-7. However, his claim does not arise from the activities of the park police in responding to his crash; rather, Bhatnagar's tort claim concerns "an unmarked, or improperly marked, rubber speed bump" on West Pacific Avenue that allegedly caused the accident. FAC, Ex. B at 3; *see also* FAC ¶ 5 ("No other parties were directly involved in the accident except for a recently installed faulty speed bump . . . installed by the Presidio Trust . . . ."); Opp'n at 1 (stating that Bhatnagar suffered

severe injuries "after falling from his bicycle while riding over an improperly installed and maintained speed bump in the Presidio park"). Further, the Presidio Trust Act requires the Presidio Trust to enter into an agreement with the United States Park Police "for the conduct of law enforcement activities and services within those portions of the Presidio transferred to the administrative jurisdiction of the Trust." Section 103(i), Presidio Trust Act, 16 U.S.C. § 460bb appendix. Thus, the park police responded to help Bhatnagar not because the accident site was under the jurisdiction of the National Park Service, but because the Presidio Trust was required to use the park police for law enforcement in the Trust's portions of the Presidio.

As to the Department of Transportation, Bhatnagar argues that it has statutory authority that might permit the department to provide "funds" for transportation projects, including projects that might include West Pacific Avenue in the Presidio. Opp'n at 7 n.1. However, whether the Department of Transportation provided funds is not relevant to Bhatnagar's claim, as a "funding relationship" does not provide grounds for a valid FTCA claim against the department.[3] *See Ferguson v. N.Y.C. Transit Auth.*, 206 F. Supp. 2d 374, 376-77 (E.D.N.Y. 2002) (finding that the existence of funding from the Department of Transportation does not establish the government's liability under the FTCA) (citing *United States v. Orleans*, 425 U.S. 807, 813 (1976) ("The Tort Claims Act was never intended, and has not been construed by this Court, to reach employees or agents of all federally funded programs that confer benefits on people.")).

In support of his argument that the Presidio Trust is not the only appropriate agency, Bhatnagar cites two cases. Opp'n at 7-8. *Scogin v. United States* involves an accident with a Department of Homeland Security ("DHS") vehicle driven by an employee of the Customs and Border Protection agency. 2013 WL 391164, at *2 (S.D. Tex. Jan. 30, 2013). The plaintiffs presented their administrative claim to a different agency one day before the two-year deadline expired, which then transferred the claim to the Customs and Border Protection agency after the deadline. *Id.* at *1. Although the government moved to dismiss, arguing that the "appropriate"

---

[3] Although not a factor in the Court's reasoning, the government notes that the rubberized speed bump at issue was installed in 2009 by the Presidio Trust Roads and Grounds crew in accordance with a design prepared by the Office of the Presidio Trust Transportation Engineer. Marshall Decl. ¶ 3, Dkt. No. 44-2.

agency did not receive the claim in time, the court found that the plaintiffs presented their claims to the appropriate agency because the activities of both agencies gave rise to the claim. *Id.* at *2 ("Although a Border Patrol officer was driving the vehicle involved in the car accident, it is undisputed that DHS is the owner of the vehicle . . . , and the FTCA regulations contemplate that 'more than one Federal agency is or may be involved.'").

Similarly, in *Thomas v. United States*, the plaintiffs asserted claims of medical malpractice and other misconduct by both Veterans Administration ("VA") and Secret Service personnel. 2005 WL 757268, at *7 (E.D. La. Mar. 31, 2005). The court found it appropriate for the plaintiffs to file the administrative claim with the VA: "Although plaintiffs' administrative claim raised allegations that implicated the actions of more than one federal agency, transfer of plaintiffs' administrative tort claim would have been inappropriate because the conduct of the [VA medical center] gave rise to plaintiffs' allegations asserted in their administrative tort claim." *Id.* at *6.

In contrast, Bhatnagar has not pleaded or identified any conduct by the National Park Service or the Department of Transportation that could have given rise to his claim. As noted above, the park police responded to help Bhatnagar not because the accident site was under the jurisdiction of the National Park Service, but because the Presidio Trust was required to use the park police for law enforcement in the Trust's portions of the Presidio. In addition, whether the Department of Transportation provides funds for transportation projects within the Presidio is not relevant as a funding relationship does not provide grounds for a valid FTCA claim against the department. Thus, there is no basis under *Scogin* or *Thomas* to find that either agency was the appropriate agency to receive Bhatnagar's claim.

Accordingly, as the Presidio Trust has exclusive administration jurisdiction over the site of Bhatnagar's accident and responsibility for the roadway and signage at that site, it is the only appropriate agency for his claim.

**B.    Timeliness of Claim**

Bhatnagar must establish that the Presidio Trust received his claim by November 14, 2011. 28 C.F.R. § 14.2 ("a claim shall be deemed to have been presented when a Federal agency receives from a claimant"). However, the exhibits attached to Bhatnagar's FAC indicate that the

8

Trust received the copy of the claim form more than two years after the November 14, 2009 incident. FAC, Ex. B at 6, 8-9. Bhatnagar argues that the government has failed to show conclusively that the Trust did not receive the claim before November 14, 2011, but the administrative record that he attached to his FAC indicates otherwise. FAC, Ex. B at 9. Even if the Presidio Trust did receive the claim after November 14, Bhatnagar notes that he timely submitted his claim to the National Park Service and the Department of Transportation, and the government therefore failed to comply with federal regulations requiring the agency to transfer the claim "forthwith." Opp'n at 11.

"[U]nder certain limited circumstances, a claim filed with the wrong agency may nevertheless be considered constructively filed with the appropriate agency." *Ortiz v. United States*, 2007 WL 404899, at *10 (E.D. Cal. Feb. 2, 2007). Although it does not appear that the Ninth Circuit has addressed the issue, as another judge in this District has recognized, "other circuits have found that a timely, but incorrectly, filed claim does constitute proper presentment where the federal agency failed to comply with 28 C.F.R. [§] 14.2(b)(1)." *Richman v. United States*, 2008 WL 3264137, at *2 (N.D. Cal. Aug. 7, 2008). In *Bukala v. United States*, 854 F.2d 201 (7th Cir. 1988), the plaintiff incorrectly filed her tort claim with the Equal Employment Opportunity Commission ("EEOC") when it should have been filed with the VA. *Id.* at 202. The EEOC did not transfer the claim to the VA or return the claim back to the plaintiff, and the limitations period expired by the time the plaintiff realized that the VA had never received her claim. *Id.* After the suit was filed at the district court, the VA moved to dismiss on the ground that the plaintiff had failed to present her claim to the VA within the two-year limitations period. *Id.* The district court granted the motion, but the Seventh Circuit reversed, finding that "when a federal agency fails to comply with the transfer regulation that a timely but misdelivered claim may nevertheless be deemed timely presented to the proper agency." *Id.* at 204.

The Eighth Circuit reached a similar conclusion in *Greene v. United States*, 872 F.2d 236 (8th Cir. 1989). There, the plaintiff fell down stairs in a building owned and operated by the United States. *Id.* at 236. Before the limitations period on her claim had expired, the plaintiff presented her claim to the General Services Administration ("GSA"), which acknowledged her

claim and subsequently denied it. *Id.* The plaintiff then filed suit and the government moved to dismiss on the ground that the plaintiff had presented her claim to the wrong agency. *Id.* In response to the motion, the plaintiff contended that her claim had been constructively filed because the government had failed to comply with the requirements of 28 C.F.R. § 14.2(b)(1). *Id.* at 236-37. The Eighth Circuit held: "When a federal agency fails to comply with section 14.2(b)(1), a claim that is timely filed with an incorrect agency shall be deemed timely presented to the appropriate agency. Because Greene's claim was timely filed, albeit with the wrong agency, and because GSA failed to transfer or return the claim, her claim satisfies the FTCA administrative claim procedure." *Id.* at 237.

*Bukala* and *Greene* are unlike the case here, where the National Park Service did forward Bhatnagar's claim to the Presidio Trust. Thus, the issue is whether the transfer occurred "forthwith." "[I]n a dutiful and timely fashion[,]" agencies are to either transfer the claim to the appropriate agency if the agency can be identified from the claim or return the claim to the claimant if transfer is not feasible. *See* 28 C.F.R. § 14.2(b)(1); *Hart v. Dep't of Labor ex rel. United States*, 116 F.3d 1338, 1340-41 (10th Cir. 1997); *Bukala*, 854 F.2d at 204. "Where one agency of government attempts in a dutiful and timely fashion to transfer a misdelivered claim to the appropriate federal agency and despite due diligence the claim arrives at the proper agency after the two year limitations period has run, the claim will be time-barred." *Bukala*, 854 F.2d at 204; *Oquendo-Ayala v. United States*, 30 F. Supp. 2d 193, 195-96 (D.P.R. 1998); *Hart*, 116 F.3d at 1340. In contrast, when an "inappropriate agency" fails in its duty to promptly comply with § 14.2(b)(1), and, as a result, a timely filed, but misdirected claim does not reach the proper agency within the limitations period, the claim may be considered timely filed. *Hart*, 116 F.3d at 1341; *Greene*, 872 F.2d at 237; *Bukala*, 854 F.2d at 204. However, claimants who wait to the last minute or the eleventh hour and file with the wrong agency cannot take advantage of constructive filing. *See Hart*, 116 F.3d at 1341; *Bukala*, 854 F.2d at 204 n.4; *Cronauer v. United States*, 394 F. Supp. 2d 93, 100 (D.D.C. 2005); *Oquendo-Ayala*, 30 F. Supp. 2d at 195-96; *Johnson v. United States*, 906 F. Supp. 1100, 1108 (S.D. W.Va. 1995); *Lotrionte v. United States*, 560 F. Supp. 41, 43 (S.D.N.Y. 1983).

There is no bright line rule for what constitutes "the last minute" or "the eleventh hour." Courts have held that claims filed with an inappropriate agency approximately eight months, *see Bukala v. United States*, 727 F. Supp. 382, 384-85 (N.D. Ill. 1989); nine weeks, *see Greene*, 872 F.2d at 236-37; and seven weeks, *see Blair v. United States*, 1990 WL 113900, at *1, 6 (D. Kan. July 23, 1990), prior to the expiration of the limitations period were constructively filed, and therefore timely. In contrast, courts have held that claims filed with an inappropriate agency on the final day, *see Cronauer*, 394 F. Supp. 2d at 100-01; one day, *see Johnson*, 906 F. Supp. at 1100; three days, *see Lotrionte*, 560 F. Supp. at 42-43; eight days, *see Oquendo-Ayala*, 30 F. Supp. 2d at 195-96; fifteen days *Martinez v. Minnis*, 257 Fed. App'x 261, 264 (11th Cir. 2007) (unpublished); and eighteen days, *see Massengale v. United States*, 2006 WL 3220333, at *1-2 (D.D.C. Nov. 6, 2006), prior to the expiration of the limitations period were filed at the "last minute" or "eleventh hour" and were therefore time barred.

The Dolan Law Firm, Bhatnagar's previous counsel, sent his claim on November 4, 2011 to the National Park Service, which received it on November 7, one week before the two-year statute of limitations expired. FAC, Ex. B at 8-10. In comparing this timeframe to the cases noted above, Bhatnagar's claim was filed outside of the time for which constructive notice is typically available. The Court is not aware of, and Bhatnagar has failed to provide, any cases that permitted constructive notice where the claim was filed within one or two weeks of the expiration of the statute of limitations. Thus, the Court finds that Bhatnagar filed his claim at the "eleventh hour," and his request for constructive notice must be rejected. Accordingly, Bhatnagar's claim is untimely.

**C. Equitable Tolling**

Even if his claim is untimely, Bhatnagar argues that the Court should equitably toll the deadline for him to file his claim because the government provided information that reasonably misled him into believing that the National Park Service was the appropriate agency to receive his claim. Opp'n at 15. He notes that the only documentation he received from the government at the time of the accident, the Case Incident Record and Evidence/Property Control Receipt, appeared to originate from the National Park Service. *Id.* at 15-16. Because of this documentation,

11

Bhatnagar argues that "[i]n spite of his good faith attempt to comply with the statutory filing requirements, [he] was misled by information he received from the government." *Id.* at 16.

To invoke the doctrine of equitable tolling, a plaintiff must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way. *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013) *cert. granted sub nom. United States v. Kwai Fun Wong*, 134 S. Ct. 2873, 189 L. Ed. 2d 831 (2014) and *aff'd and remanded sub nom. United States v. Kwai Fun Wong*, 135 S. Ct. 1625 (2015) (quotations and citations omitted). This standard is very high. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (stating "a garden variety claim of excusable neglect" is not enough to show equitable tolling); *Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380, 384-86 (9th Cir. 1996) (affirming rejection of equitable tolling argument where plaintiff did not diligently pursue her claim by filing suit on time); *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants."). "The burden is on the plaintiff to show that equitable tolling is appropriate." *United States v. Marolf*, 173 F.3d 1213, 1218 n.3 (9th Cir. 1999) (citation omitted).

Bhatnagar maintains that he "actively pursued" his claim. Opp'n at 16. However, he provides no explanation for why he waited until just days before the two-year deadline to file his claim. Further, Bhatnagar had retained counsel as of December 2010—almost a year before the two-year deadline expired. FAC, Ex. B at 5 (Designation of Attorney, signed by Bhatnagar on December 10, 2010). Despite this, Bhatnagar waited eleven more months to file the one-page administrative claim form a week before the limitations deadline. As the Supreme Court stated in *McNeil v. United States*, "[i]t is no doubt true that there are cases in which a litigant proceeding without counsel may make a fatal procedural error, but the risk that a lawyer will be unable to understand the exhaustion requirement is virtually nonexistent." 508 U.S. 106, 113 (1993). Thus, the Court finds that Bhatnagar did not diligently pursue his claim.

As to his argument that the government misled him based on the documentation received from the park police, it was Bhatnagar's former counsel who prepared and filed the administrative

12

claim. Thus, whether or not Bhatnagar himself knew where to file his claim, he fails to provide an explanation as to why his former counsel would be unable to determine where to file. *See* 36 C.F.R. § 1009.2(b) ("[FTCA] Claims shall be filed directly with the Presidio Trust."); *Wong*, 732 F.3d at 1052 ("[A] garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." (quotation marks and citation omitted)). Bhatnagar has failed to establish that extraordinary circumstances stood in his way.

Accordingly, given the high standard to invoke equitable tolling, the Court finds it is not appropriate in this case.

## CONCLUSION

Based on the analysis above, the Court **GRANTS** the government's Motion to Dismiss. Since equitable tolling cannot apply in this case, further amendment would be futile and dismissal is therefore **WITHOUT LEAVE TO AMEND**. The Clerk of Court shall close the file.

**IT IS SO ORDERED.**

Dated: May 19, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge